ALEJANDRO N. MAYORKAS
United States Attorney
JOHN S. GORDON
Assistant United States Attorney
Chief, Criminal Division
MICHAEL J. GENNACO
Assistant United States Attorney
Chief, Civil Rights Section
California Bar No. 112969
MICHAEL TERRELL
Assistant United States Attorney
Chief, Narcotics Section
California Bar No. 113656
CAROLINE C. WITTCOFF
Assistant United States Attorney
Civil Rights Section
BARBARA (BOBBI) BERNSTEIN
Trial Attorney, Civil Rights Division
1400/1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5872
(213) 894-0526
(213) 894-2393

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
JAN 24 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BUFORD O'NEAL FURROW, JR., aka Neal Furrow,<br>Defendant. | No. CR 99-838(A)-NM<br><br>PLEA AGREEMENT FOR DEFENDANT BUFORD O'NEAL FURROW, JR. |

ENTER ON ICMS
JAN 24 2001

1. This constitutes the plea agreement between BUFORD O'NEAL FURROW, JR. ("defendant"), and the United States Government, as represented by the United States Attorney's Office for the Central District of California and the Department of Justice ("the

166

government"), in the above-captioned case. This agreement is limited to the U.S. Attorney's Office and the Department of Justice and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities. The terms of the agreement are as follows:

PLEA

2. Defendant agrees to plead guilty to all sixteen counts included in the First Superseding Indictment ("Indictment") in United States v. Buford O'Neal Furrow, Jr., No. CR 99-838(A)-NM.

NATURE OF THE OFFENSES

3. The First Superseding Indictment in this case charges defendant with sixteen offenses. Count One charges a violation of 18 U.S.C. § 1114 [Murder of an Employee of the United States]. In order to convict defendant on this count, the government must prove:

a) that defendant killed Joseph Santos Ileto;
b) that he killed Mr. Ileto with malice aforethought;
c) that he premeditated the killing;
and d) that he killed Mr. Ileto while Mr. Ileto was engaged in, or on account of, the performance of his official duties as a U.S. Postal Carrier.

4. Count Two charges a violation of 18 U.S.C. § 924(c),(j) [Use of a Firearm in the Commission of a Federal Felony, resulting in death]. To convict defendant of the subsection (c) offense, the government must prove:

a) that defendant knowingly used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, an underlying federal crime of violence;
and b) that he committed the underlying federal crime of violence, which, in this case, is the murder alleged in Count One;

Additionally, the Indictment alleges factors that enhance the penalty, and, in order to prove these factors, the government must prove:

c) that defendant discharged the firearm in the course of the violation.

For the subsection (j) offense, the government must also prove:

a) that defendant committed the § 924(c) violation described above;
b) that, in the course of committing the § 924(c) violation, he caused the death of Joseph Santos Ileto by discharging the gun;
and c) that he killed Mr. Ileto in a way that constitutes murder.

5. Count Three alleges a violation of 18 U.S.C. § 245(b)(4)(A) [Federally Protected Activities]. To convict defendant on this count, the government must prove:

a) that defendant acted willfully;
b) that he used force or threat of force;
c) that he injured, intimidated, or interfered with Joseph Santos Ileto, or attempted to do so;
d) that he acted because Mr. Ileto was participating in the employment of an agency of the United States;
and e) that he also acted because Mr. Ileto was participating in that employment without discrimination on account of race, color, religion or national origin.

Additionally, the Indictment alleges factors that enhance the penalty, and, in order to prove these factors, the government must prove:

f) that the offense included the use of a dangerous weapon and resulted in the death of Mr. Ileto.

6. Counts Four, Five, Six, Seven, and Eight allege violations of 18 U.S.C. § 245(b)(2)(F) [Federally Protected Activities]. In order to convict defendant on each of these counts, the government must prove:

a) that defendant acted willfully;
b) that he used force or threat of force;
c) that he injured, intimidated, or interfered with the victim named in the count (for Count Four, Isabel Shalometh; for Count Five, Jane Doe, a juvenile; for Counts Six through Eight, John Does One through Three, juveniles), or attempted to do so;
d) that he acted because of the religion of the victim;
and e) that he also acted because the victim was enjoying the goods, services, facilities, privileges, advantages or accommodations of a place of exhibition or entertainment which serves the public.

Additionally, the Indictment alleges factors that enhance the penalty, and, in order to prove these factors, the government must prove:

f) that the offense included the use of a dangerous weapon and resulted in bodily injury to the victim.

Finally, with respect to Counts Four and Five, the Indictment alleges as a sentencing factor, and the government therefore must prove:

g) that defendant committed the offense in an attempt to kill the victim.

7. Count Nine alleges a violation of 18 U.S.C. § 922(g)(1) [Felon-in-Possession]. To convict defendant on this count, the government must prove:

a) that defendant acted knowingly;
b) that he possessed one or more of the seven firearms listed in Count Nine (a glock model 26, 9mm handgun, serial number BSM901; a Norinco mdel 320, 9mm short-barreled rifle, serial number MS00211; a Maadi model RML, 7.62 caliber automatic rifle, serial number ES03629; a Bushmaster model XM15-E2s, .223 caliber rifle, serial number L073427; an Imbel model L1A1, .308 caliber rifle, serial number 119013; an Imbel model L1A1, .308 caliber rifle, serial number 119669; and a Davis Industries model D-22, .22 caliber handgun, serial number 395409);
c) that the possession was in or affecting interstate commerce;
and d) that, at the time of the possession, defendant had previously been convicted of a crime punishable by imprisonment for a term that exceeded one year.

In this case, the Indictment describes that underlying conviction as an assault in the second degree, in violation of the Revised Code of Washington 9A.36.021(1)(c), for which defendant was convicted in Washington State on May 21, 1999.

8. Counts Ten, Eleven, Twelve, Thirteen, and Fourteen allege violations of 18 U.S.C. § 924(c) [Possession of a Firearm in the Commission of a Federal Crime of Violence]. In order to convict defendant on these counts, the government must prove:

a) that defendant knowingly used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, an underlying federal crime of violence;

and b) that he committed the underlying federal crime of violence (which, for Counts Ten through Fourteen, is defined as the civil rights crime charged in Counts Four through Eight, respectively).

Additionally, the Indictment alleges factors that enhance the penalty, and, in order to prove these factors, the government must prove:

c) that defendant discharged the firearm in the course of the violation;

and d) that the firearm was a short-barreled rifle.

9. Count fifteen alleges a violation of 18 U.S.C. § 922(o)(1) [Possession of a Machinegun]. In order to convict defendant on this count, the government must prove:

a) that defendant possessed a machinegun;

and b) that he did so knowingly and unlawfully.

10. Count sixteen alleges a violation of 26 U.S.C. § 5861(d) [Possession of an Unregistered Firearm]. In order to convict defendant on this count, the government must prove:

a) that defendant possessed a rifle having a barrel length of less than sixteen inches;

b) that he possessed the firearm knowingly;

and c) that the firearm was not registered to defendant in the National Firearms Registration and Transfer Record.

Defendant admits that he is, in fact, guilty of all of the offenses contained in the First Superseding Indictment.

PENALTIES AND RESTITUTION

11. The statutory maximum sentence that could be imposed for each of these violations is as follows:

a) For a violation of 18 U.S.C. § 1114 (Count One): death or life imprisonment without the possibility of release; a fine of $250,000; restitution as ordered by the Court. [The minimum

sentence for this offense is life imprisonment without the possibility of release.]

b) For a violation of 18 U.S.C. § 924(c),(j) (Count Two): death or life imprisonment; a fine of $250,000; restitution as ordered by the Court; five years supervised release. [The prison term for this offense cannot run concurrently with any other term of imprisonment.]

c) For a violation of 18 U.S.C. § 245(b)(4)(A), resulting in death (Count Three): death or life imprisonment; a fine of $250,000; restitution as ordered by the Court; five years supervised release.

d) For each violation of 18 U.S.C. § 245(b)(2)(F) involving an attempt to kill (Counts Four and Five): life imprisonment; a fine of $250,000; restitution as ordered by the Court; five years supervised release.

e) For each violation of 18 U.S.C. § 245(b)(2)(F) involving use of a dangerous weapon or resulting in bodily injury (Counts Six, Seven, and Eight): ten years imprisonment; a fine of $250,000; restitution as ordered by the Court; three years supervised release.

f) For a violation of 18 U.S.C. § 922(g)(1) (Count Nine): ten years imprisonment; a fine of $250,000; restitution as ordered by the Court; three years supervised release.

g) For the first violation of 18 U.S.C. § 924(c) (Count Ten): ten years imprisonment; a fine of $250,000; restitution as ordered by the Court; three years supervised release. [No prison term for this offense can run concurrently with any other term of imprisonment.]

h) For the second and any subsequent violation of 18 U.S.C. § 924(c) (Counts Eleven, Twelve, Thirteen, and Fourteen): twenty-five

years imprisonment; a fine of $250,000; restitution as ordered by the Court; five years supervised release. [No prison term for this offense can run concurrently with any other term of imprisonment.]

i) For a violation of 18 U.S.C. § 922(o)(1) (Count Fifteen): ten years imprisonment; a fine of $250,000; restitution as ordered by the Court; three years supervised release.

j) For a violation of 26 U.S.C. §5861(d) (Count Sixteen): ten years imprisonment; a fine of $10,000; restitution as ordered by the Court; three years supervised release.

Therefore, the total maximum sentence for all offenses to which defendant is pleading guilty is: death (for three counts) or life imprisonment without release (for five counts); $3,760,000 in fines; restitution as ordered by the Court; and five years supervised release. [The statutory minimum sentence is two consecutive terms of life imprisonment without parole, in addition to one hundred ten years imprisonment which cannot be served concurrently with any other term.]

12. Defendant must also pay a special assessment in the amount of $100 for each of the sixteen felony counts in the First Superseding Indictment.

13. Defendant understands that he will be required to pay full restitution to the victims of his offenses if the Court so orders. If the Court orders restitution, defendant further agrees not to seek the discharge of any resulting restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

14. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if he

violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

FACTUAL BASIS

15. Defendant and the Government agree and stipulate to the following statement of facts:

a. On August 7, 1999, in furtherance of defendant's preconceived plan to commit religiously and racially motivated murder in Los Angeles, defendant began final preparations for his trip to Los Angeles: he gathered together numerous weapons and a cache of ammunition; he stole several thousand dollars from his father; he purchased a van; and he began his drive to California. Defendant crossed state lines with the seven firearms described in Count Nine of the First Superseding Indictment. Among these firearms was a Maadi rifle that had been converted illegally into a fully automatic firearm, and a short-barreled rifle which was not registered to defendant in the National Firearms Registration and Transfer Record. Defendant had previously been convicted of a felony in Washington State, and he knew that he possessed these firearms in violation of the law. He also knew that his probation for the prior felony forbade him to possess a firearm or to leave the state of Washington.

b. When defendant arrived in Los Angeles on August 9, he scouted the city, looking for an appropriate location for his planned shooting spree. On August 9, 1999, defendant happened upon the North Valley Jewish Community Center (JCC) in Grenada Hills, California, and he decided on that location as his target. Before going to sleep on August 9, defendant spent several hours loading clips of ammunition.

c. On August 10, 1999, defendant considered which of his numerous guns he would use to commit his shooting. Defendant decided to use his Norinco semi-automatic firearm, a short-barreled rifle.

d. Defendant entered the JCC with his Norinco gun and several clips of ammunition. Isabel Shalometh,

who worked at the reception desk, approached defendant as he entered the building. Defendant, intending to kill Ms. Shalometh because he presumed her to be Jewish and enjoying the services of the JCC, aimed his gun at her and shot her in the abdomen. Defendant then shot indiscriminately at the other people inside the JCC because he presumed that they, too, were Jewish and were enjoying the goods and services of the JCC, a place of exhibition and entertainment which serves the public.

e. During his shooting spree inside the JCC, defendant shot a female teenager, whom he intended to kill, as well as three young boys. As a result of the shooting, all five victims suffered serious bodily injury.

f. Fearing that his van had been identified at the JCC, defendant decided to steal another vehicle for his escape. Defendant drove to a nearby parking lot, where he chose as his target a Toyota driven by a young woman. Defendant pointed a gun at the victim and ordered her to move from the driver's seat to the front passenger's seat. Defendant intended to hold the victim hostage in order to prevent her from reporting the carjacking to authorities.

g. As defendant began transferring his belongings from his van to the victim's Toyota, she escaped and ran into a nearby building. When the victim emerged from the building with other witnesses, defendant hastily got into the Toyota and drove away.

h. Several miles into his escape, defendant noticed a nonwhite U.S. postal carrier, Joseph Santos Ileto, who was in uniform, delivering mail. Angered at the sight of a nonwhite federal employee, defendant decided to kill the postal carrier. Defendant got out of the Toyota and approached Mr. Ileto, getting the victim's attention by asking him to mail a letter. As Mr. Ileto agreed to mail defendant's letter, defendant pulled a Glock model 26, 9 mm handgun, from his back pocket and aimed it at Mr. Ileto. Defendant fired his weapon nine times, hitting Mr. Ileto with all nine shots. Defendant continued to shoot at Mr. Ileto, even as the victim tried to get away. Mr. Ileto died in the street where he fell. Defendant committed the murder of Mr. Ileto with premeditation and malice aforethought, and because of Mr. Ileto's performance of his official duties as a U.S. Postal Carrier. Defendant also acted

because he was angry that Mr. Ileto was enjoying federal employment without discrimination on account of race, color, religion or national origin.

i. After killing Mr. Ileto, defendant abandoned the Toyota and took a taxi to a new motel, where he washed gunshot residue from his hands. After drinking and taking a nap, defendant decided to take a taxi to Las Vegas because he did not want to be captured by police in Los Angeles. The next morning, in Las Vegas, defendant looked up "synagogues" in the phone book and considered continuing his crime spree. However, because his picture was being broadcast on national television stations, and because he believed he had already succeeded in making the statement he wished to make, defendant decided to "get it over with" and turn himself in to the FBI in Las Vegas.

j. On August 11, 1999, defendant made his way to the FBI office in Las Vegas, where he knowingly, willingly, and voluntarily offered a confession to the crimes he committed on August 10. Although defendant suffered from, and took medication for, mental disorders, he was not insane and did not suffer from any mental condition that made him unable to formulate the requisite *mens rea* or intent necessary for any of the crimes charged in the indictment.

k. While acknowledging that defendant was not insane and possessed the requisite intent and *mens rea* to be adjudged guilty of the offenses contained in the First Superseding Indictment, defendant maintains that a sentence of death is not warranted due to a number of issues, including and primarily issues concerning his mental health.

SENTENCING FACTORS

16. Defendant understands that the Court is required to consider and apply the United States Sentencing Guidelines (USSG), but may depart from those guidelines under some circumstances.

17. Defendant and the government agree and stipulate that, in accordance with the statutory minimum sentences and agreed-upon guidelines calculations, defendant's minimum sentence would be life imprisonment without the possibility of release on Counts One, Two,

Three, Four, and Five. Moreover, the parties note that the sentence for Count Two cannot run concurrently with any other term of imprisonment. (§924(c)(1)(D)(ii)). Additionally, the parties agree that the statutory language in § 924(c) necessarily results in a sentence of ten years for Count Ten and twenty-five years for each of Counts Eleven, Twelve, Thirteen, and Fourteen. As with the sentence for Count Two, the sentences for Counts Ten through Fourteen cannot run concurrently with each other or any other term of imprisonment.

18. Defendant and the government agree and stipulate to the following applicable sentencing calculations:

a. *Count One*: the statutory minimum sentence for this Count is life imprisonment without the possibility of release.

b. *Count Two*: the base offense level for this count is **43** (USSG § 2A1.1). This level must be increased by **3** points because the defendant selected his victim based on the victim's race, color, and national origin (USSG § 3A1.1(a)). The base level shall be increased by an additional **12** levels because the offense was a felony intended to promote a federal crime of terrorism (USSG § 3A1.4(a)). Accordingly, the offense level for Count Two is **58** points.

c. *Count Three*: The base offense level for this count is **43** (USSG § 2H1.1, which makes reference to the underlying offense, USSG § 2A1.1). Again, the base level must be increased by **3** levels in accordance with USSG § 3A1.1 and by **12** levels in accordance with USSG § 3A1.4(a). The offense level for Count Three is thus **58** points.

d. *Counts Four and Five*: The base offense level for these counts is **28** (USSG § 2H1.1 and § 2A2.1). In accordance with the guideline for assault with intent to commit murder, this level must be increased by **4** points because the victim sustained life-threatening bodily injury (§ 2A2.1(b)(1)(A)). Additionally, the level must be increased by **3** points in accordance with USSG § 3A1.1 and by **12** levels in accordance with USSG § 3A1.4(a). The offense level for Counts Four and Five is thus **47** points.

e. *Counts Six through Eight*: The base offense level for these counts is **15** (USSG § 2H1.1; § 2A2.2). In accordance with the Aggravated Assault guideline, this level must be increased by **2** points because the offense involved more than minimal planning

(§ 2A2.2(b)(1)), and by **9** points because a firearm was discharged and life-threatening or serious bodily injury resulted (see USSG § 2A2.2(b)(2) and (3), calling for a maximum adjustment of 9 levels for both subsections). Again, the offense level must be increased by **3** levels in accordance with USSG § 3A1.1 and by **12** levels in accordance with USSG § 3A1.4(a). The offense level for Counts Six through Eight is thus **41** points.

f. *Count Nine*: The base offense level for this offense is **22** points (USSG § 2K2.1(a)(3)). This level must be increased by **2** points, due to the number of firearms involved. USSG § 2K2.1(b)(1)(B). The offense level for Count Nine is thus **24** points.

g. *Counts Ten through Fourteen*: The § 924(c) offenses are not subject to guideline calculations because the appropriate sentence is provided by statute. Count Ten carries a mandatory sentence of ten years, and Counts Eleven through Fourteen each carry a mandatory sentence of 25 years, totaling 110 years. All of these terms must run consecutively to each other and to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(C)(i).

h. *Count Fifteen*: The base offense level for this count is **22** points. USSG § 2K2.1(a)(3).

i. Count *Sixteen*: The base offense level for this count is **22** points. USSG § 2K2.1(a)(3).

19. Defendant and the government further agree and stipulate that no downward departure will be requested. Defendant understands that he will be never be paroled, he will never be pardoned, he will never be placed on supervised release or any other kind of release, and his sentence will not be commuted for the rest of his natural life. In addition, defendant stipulates and agrees never to seek a pardon or any release from prison in the future.

20. Defendant and the government stipulate that there is no agreement as to defendant's criminal history or criminal history category.

21. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Defendant understands that the Court, with the aid of the pre-sentence report, will

determine the facts and calculations relevant to sentencing. Both defendant and the government remain free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, defendant cannot, for that reason alone, withdraw defendant's guilty plea.

DEFENDANT'S OBLIGATIONS

22. Defendant agrees:

a) To plead guilty as set forth in this agreement.

b) To not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) To not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

d) To pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay.

23. Defendant further agrees:

a) Upon notice to and in the presence of defendant's counsel, to submit to questioning upon request of the government, at any time from the date of judgment in this case until defendant's death, and to provide complete and

//

//

//

truthful information to the FBI, the U.S. Attorney's Office, the Civil Rights Division of the Department of Justice, or any other government agency designated by the United States Attorney's Office which requests to speak to defendant.

b) Never to profit financially from any of the crimes contained in the First Superseding Indictment. In order to insure that defendant does not profit from these crimes, defendant hereby assigns to Isabel Shalometh, his juvenile victims, and the survivors of Joseph Santos Ileto, all rights, title and interest that he may have in the profits resulting from any story or account concerning the circumstances of defendant's life and/or defendant's criminal activity.

c) Not to object to disclosure by the government of information relating to the investigation and prosecution of these crimes. Such disclosure can be made by the government to: the victims of these offenses and their family members; mental health professionals; local, state and federal law enforcement officers; and any other entities or individuals to whom the government, in its discretion, believes disclosure is appropriate based on the government's evaluation of the public interest.

d) Upon notice to and in the presence of defendant's counsel, to meet with his victims and/or members of his victims' families, at any time from the date of judgment in this case until defendant's death, if his victims and/or members of his victims' families request such a

meeting. Any such meeting will be held in a controlled setting with the assistance of a professional counselor. At any such meeting, defendant agrees to provide complete and truthful information to his victims and/or members of his victims' families.

CONSIDERATION BY THE GOVERNMENT

24. In exchange for defendant's guilty plea and the complete fulfillment of all of defendant's obligations under this agreement, the government agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) To recommend that defendant be sentenced to life imprisonment without the possibility of release on each of the first three counts of the First Superseding Indictment.

c) To request at the time of sentencing that the Court strike the government's Notice of Intent to Seek the Death Penalty.

WAIVER OF CONSTITUTIONAL RIGHTS

25. By pleading guilty, defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury. At any trial, whether by jury or by the Court, defendant would have the following rights, which defendant now gives up:

a. The right to the assistance of counsel, including, if defendant could not afford an attorney, the right to have the Court appoint one to represent defendant.

b. The right to be presumed innocent and to have the

burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

c. The right to confront and cross-examine witnesses against defendant.

d. The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, not to have that choice used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that could be filed.

MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

26. Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that the sentence is between the statutory minimum and statutory maximum specified above and is constitutional. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

27. The government gives up its right to appeal the Court's Sentencing Guidelines calculations, provided that the Court does not

depart downward in offense level or criminal history category, or impose a sentence that is below the statutory minimum sentence.

PARTIES TO AGREEMENT

28. Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the government or the defendant regarding the sentence to be imposed. Defendant further understands that even if the Court ignores the recommendations included in this agreement and imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all of defendant's obligations under this agreement. Defendant understands that no one -- not the government, defense counsel, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory minimum and statutory maximum of life in prison without release.

29. This agreement on behalf of the government is limited to the U.S. Attorney's Office for the Central District of California and the Department of Justice, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities. This agreement applies only to crimes committed by defendant. This agreement does not apply to any forfeiture proceedings, and shall not preclude any past, present, or future forfeiture actions.

NO ADDITIONAL AGREEMENTS

30. Except as set forth herein, there are no promises, understandings or agreements between the government and defendant or

defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

If a fully executed copy of this agreement is not returned to the U.S. Attorney's Office by 5:00 p.m. on January 26, 2001, this agreement will automatically be withdrawn and will thereafter have no legal effect or force.

AGREED AND ACCEPTED

U.S. ATTORNEY'S OFFICE
CENTRAL DISTRICT OF CALIFORNIA

ALEJANDRO N. MAYORKAS
United States Attorney

MICHAEL J. GENNACO
MICHAEL TERRELL
CAROLINE C. WITTCOFF
Assistant United States Attorneys

U.S. DEPT. OF JUSTICE
CIVIL RIGHTS DIVISION

BILL LANN LEE
Ass't Attorney General

BARBARA (BOBBI) BERNSTEIN
Trial Attorney
Civil Rights Division

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in

any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

BUFORD O'NEAL FURROW, JR. Date 1/22/01
Defendant

We are Buford O'Neal Furrow, Jr.'s, attorneys. We have carefully discussed every part of this agreement with our client. Further, we have fully advised our client of his rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. To our knowledge, our client's decision to enter into this agreement is an informed and voluntary one.

Marilyn E. Bednarski Date 1/22/01
Sean K. Kennedy
William H. Forman
Deputy Federal Public Defenders

Judy Clarke Date 1/22/01
Executive Director
Federal Defenders of Eastern
Washington and Idaho

# CERTIFICATE OF SERVICE BY HAND

I, MICHAEL TERRELL, declare:

That I am a citizen of the United States and reside and am employed in Los Angeles County, California; that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California and I am a member of the Bar of the United States District Court for the Central District of California; that on January 24, 2001, I hand delivered in the above-entitled action, a

copy of: **PLEA AGREEMENT FOR DEFENDANT BUFORD O'NEAL FURROW, JR.**

to:

**Sean K. Kennedy, Esq.**
**Marilyn E. Bednarski, Esq.**
**William H. Foreman, Esq.**
**Deputy Federal Public Defenders**

**Judy Clarke, Esq.**
**Federal Defenders of Eastern Washington and Idaho**

This Certificate is executed on January 24, 2001, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

MICHAEL TERRELL